**UNITED FOOD AND COMMERCIAL WORKERS LOCAL 951, Plaintiff,**

**v.**

**Phillip MULDER, Charles Buck, and Leon Gibbons, Defendants.**

**UNITED FOOD AND COMMERCIAL WORKERS LOCAL 951, Plaintiff,**

**v.**

**Phillip MULDER, Charles Buck, and Leon Gibbons, Defendants.**

**Nos. 1:91–CV–623, 1:92–CV–653.**

United States District Court,
W.D. Michigan, S.D.

Jan. 13, 1993.

Ted Iorio, Christine Ann Reardon, Kalniz, Iorio & Feldstein, Toledo, MI, for plaintiff.

William C. Schaub, Regional Atty., N.L.R.B., Detroit, MI, Margery E. Lieber, Asst. Gen. Counsel, Adam M. Nemzer, N.L.R.B., Washington, DC, for intervenor.

Sam F. Massie, Allaben, Massie, Vander Weyden & Timmer, Grand Rapids, MI, Glenn M. Taubman, National Right to Work Legal Defense Foundation, Springfield, VA, for defendants.

## OPINION

QUIST, District Judge.

In *Communication Workers of America v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), the Supreme Court said that Section 8(a)(3) of the Labor Management Relations Act, 29 U.S.C. § 158(a)(3) permits an employer and union to enter into an agreement requiring all employees to become union members as a condition of continued employment, "but the 'membership' that may be so required has been 'whittled down to its financial core.'" *Id.* at 745, 108 S.Ct. at 2648. The issue presented in *Beck* was "whether this 'financial core' includes the obligation to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment." *Id.* The Court held that it did not: "We conclude that § 8(a)(3) ... authorizes the execution of only those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor management issues.'" *Id.* at 762–763, 108 S.Ct. at 2657 (quoting *Ellis v. Railway Clerks*, 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984)).

The Supreme Court has not yet addressed, however, the mechanism that a private-sector union must institute to comply with the obligation not to charge nonmembers for activities unrelated to dealing with the employer on labor management issues. Neither has it addressed the narrow question presented in the instant case: whether this Court can enforce the results of an arbitration which, pursuant to a union's internal procedure, decided disputes over charges to nonmembers.

In these consolidated cases, plaintiff United Food and Commercial Workers Local 951 (the "Union") is the sole and exclusive bargaining agent for Meijer, Inc. The defendants are three employees of Meijer, Inc., who are members of the collective bargaining unit but are no longer members of the Union. At the time defendants tendered their resignation from the Union, each of them notified the Union that he objected to paying any amount of service fees not related to collective bargaining, grievance administration, or contract administration.

The Union had instituted a Service Fee Rebate Procedure (Procedure) which provides a mechanism whereby nonmembers can challenge the Union's calculation of the reduced service fee. The Procedure requires that nonmembers file written objections which are consolidated for appeal to the Local Union Executive Board. Objections to the decision of the Board are referred to the American Arbitration Association (AAA) for decision by an impartial arbitrator selected by the AAA. The Procedure does not state that the decision of the arbitrator will be final and binding on the parties or that judgment may be entered on the arbitral award. The Procedure provides that objecting nonmembers must exhaust the remedies provided in the Procedure "prior to seeking judicial review of any issues capable of resolution under this procedure." Service Fee Rebate Procedure § VI.

In 1990 and again in 1991, the Union referred defendants' objections to arbitration. Each time, the arbitrator denied the objections and awarded the disputed services fees to the Union. The Union brought its first action to enforce the arbitration award following the 1990 arbitration and brought the second action following the 1991 arbitration. In the first action, Case No. 1:91–CV–623, both parties filed motions for summary judgment on the issue of whether this Court should confirm the arbitration award. In addition, the National Labor Relations Board (NLRB) petitioned for intervention and a stay and was allowed to intervene. The cross-motions were referred to Magistrate Judge Joseph G. Scoville for his recommendation.

### Magistrate's Report and Recommendation

Following briefing and oral argument, Magistrate Judge Scoville issued a Report and Recommendation on October 1, 1992, recommending that summary judgment be granted to defendants. The Magistrate Judge found that the Court did not have

jurisdiction to enforce the arbitration and reasoned that the arbitration could not be enforced because defendants had not agreed in writing to arbitration and to the entry of judgment on the arbitration decision. The Recommendation was based on the principle that arbitration is a matter of consent that cannot be imposed on a party against his or her will.

The Union filed objections to the Report and Recommendation. On dispositive motions, the district court makes a *de novo* determination of the portions of the magistrate's report and recommendation against which objections have been properly raised. Fed.R.Civ.P. 72(b).

Following oral argument on the objections, the parties agreed to consolidate Case No. 1:91–CV–623 and Case No. 1:92–CV–653 for purposes of this Court's decision as to the issues raised by the pending cross-motions for summary judgment in Case No. 1:91–CV–623. The parties also agreed that all pleadings filed in connection with Case No. 1:91–CV–623 should be deemed to have been filed in Case No. 1:92–CV–653. This Court has issued an Order consolidating the cases.

### Union's Objections

The claim on which all of plaintiff's substantive objections rest is that the arbitration clause in its Service Fee Rebate Procedure is valid and enforceable without the express consent of the defendants. The Union has raised the following specific objections to the Magistrate Judge's Report and Recommendation:

1.a. The Union objects to the characterization of the Collective Bargaining Agreement and the Service Fee Rebate Procedure in the findings of fact, (¶¶ 5 and 6), and requested that the text be quoted rather than characterized. (*See Plaintiff's Notice of Appeal/Objections* at 4–5.)

1.b. The Union objects that paragraph 9 of the finding of facts implies that "a writing containing a written provision to settle by arbitration any controversy with Local 951 concerning service fees" is requisite to confirmation of the award and requests that the paragraph be modified to reflect the fact that the document that constitutes

Local 951's internal mechanism for resolving fee disputes does not provide for fee-payers to be signatories. (*See Plaintiff's Notice of Appeal/Objections* at 4–5.)

2. The Union objects that the Magistrate erred in finding no jurisdiction under Section 301 of the Labor Management Act, 29 U.S.C. § 185 and in requiring an agreement between the objecting fee payers and the Union as a prerequisite to arbitration. It argues that the duty of fair representation (1) serves as the governing standard for the legal sufficiency of a service fee rebate procedure; (2) derives from the Union's obligation to represent all bargaining unit members; and thus (3) emanates from the Union security provisions which are contained in the collective bargaining agreement between the Union and the employer, to which the employees are, appropriately, not signatories. Jurisdiction thus derives "from the very nature of the union security clause, the duty of fair representation, and the judicially imposed mandate to exhaust internal union remedies." *Plaintiff's Notice of Appeal/Objections* at 9. Moreover, the duty of fair representation does not require that nonmembers be a signatory to the Procedure for determining the service fee and it is acceptable to include in that Procedure arbitration of the amount of rebate. (*See Plaintiff's Notice of Appeal/Objections* at 6–15.)

3. & 4. The Union objects that the Magistrate misapplied the Federal Arbitration Act, 9 U.S.C. §§ 1–14, and erred in declining to confirm the arbitration award for the same reason it states in its second objection—that defendants are not, in the scheme of things, contemplated as signatories on the collective bargaining agreement and that the Union has the power, under the collective bargaining agreement, to determine the procedure for resolving rebates. Thus, it claims, an arbitration was appropriate and its confirmation *pro forma*. (*See Plaintiff's Notice of Appeal/Objections* at 15–20.)

### Decision
#### Findings of Fact

Plaintiff's objections to the findings of fact are insubstantial. The Magistrate's

characterization of plaintiff's Collective Bargaining Agreement and Service Fee Rebate Procedure in paragraphs 5 and 6 of the findings of fact are accurate summaries of those documents. Paragraph 9 is a straightforward recitation of an undisputed fact that does not contain the implication plaintiff ascribes to it.

### Section 301 Jurisdiction

■ The Magistrate Judge correctly determined that this Court does not have jurisdiction over the Union's actions to enforce the arbitration awards pursuant to Section 301 of the Labor Management Act, 29 U.S.C. § 185. The language of the Act does not provide for federal court jurisdiction over a case brought by a union against individual employees. 29 U.S.C. § 185(a) provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In oral argument, plaintiff claimed that the "penumbra" of Section 301 conferred jurisdiction. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 199, 83 S.Ct. 267, 269, 9 L.Ed.2d 246 (1962); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). Plaintiff did not, however, point to any decisions that included within the penumbra jurisdiction a case in which a union sued individual employees. To the contrary, in such cases, the courts have determined that Section 301 does not provide jurisdiction. *See Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 407, 101 S.Ct. 1836, 1840, 68 L.Ed.2d 248 (1981) (Section 301 shields employees from suits for damages); *Building Material & Dump Truck Drivers v. Traweek*, 867 F.2d 500, 507–508 (9th Cir.1989).

The Union asserted in its brief and oral argument that the instant actions are not adversarial against defendants but instead merely seek confirmation that its Procedure is acceptable. Plaintiff did not, however, bring an action for a declaratory judgment on the acceptability of its Procedure. Instead, it has asked for enforcement of an arbitration award against defendants and, by doing so, presented the Court with an adversarial procedure over which it lacks jurisdiction.

■ Jurisdiction is also not bestowed by the fact that the cases involve arbitration. While the Supreme Court established that the district courts have jurisdiction to specifically enforce arbitration clauses found in collective bargaining agreements, *see Textile Workers Union v. Lincoln Mills*, 353 U.S. at 458, 77 S.Ct. at 919, any duty to arbitrate derives from a contractual agreement of the parties to the arbitration. In *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648–649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), the Supreme Court said:

> "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." ... This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.

The Supreme Court recently reiterated this principle in a NLRB case, stating that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Litton Financial Printing v. N.L.R.B.*, — U.S. —, 111 S.Ct. 2215, 2222, 115 L.Ed.2d 177 (1991).

The arbitrations at issue did not arise from a collective bargaining agreement or any other agreement between plaintiff and defendants but rather from the internal Union Procedure. The internal Procedure was unilaterally instituted by the Union and was not the subject of an agreement between the Union and the employees. Thus, the Procedure did not contemplate or include an agreement by defendants to arbitrate their disputes with the Union. Absent such an agreement, the arbitrators'

judgments cannot be enforced by this Court.

### Federal Arbitration Act

■ The lack of consent to arbitration also prevents plaintiff from obtaining enforcement of the arbitrations pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–14. The Act applies only to written agreements to submit controversies to arbitration (9 U.S.C. § 2) and requires that there be written consent to entry of judgment on an arbitration decision (9 U.S.C. § 9) before a decision can be enforced. The law on this point is well-settled in the Sixth Circuit. In *Roney and Company v. Kassab*, 981 F.2d 894 (6th Cir.1992), the Court said:

> [W]e have recognized that the FAA (Federal Arbitration Act) does not require parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.... It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

981 F.2d at 897 (quoting *Wiepking v. Prudential–Bache Securities, Inc.*, 940 F.2d 996, 998 (6th Cir.1991)). The requirement of Section 9, that the parties consent to entry of judgment, bars the relief the Union requests even in the case of Mr. Bucks, who arguably agreed in writing to participate in the first arbitration. *See* Magistrate's Report and Recommendation at 19–24.

### Fulfillment of Duty

Finally, the Union's argument that it has fulfilled its obligation to defendants by establishing its internal Procedure, and that defendants are thus bound by the arbitration included within the Procedure despite their lack of consent, mischaracterizes the issue before the Court, which is whether a federal court can put its *imprimatur* on the arbitration awards.

It is an open question whether, in implementing *Beck*, strictures will be placed on private-sector unions like those placed on public-sector unions. *See Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) (procedures for determining the amount to be paid by nonmembers of public-sector unions must include safeguards insuring that dissenters' funds are not used for improper purpose, provision of adequate information to nonmembers on the basis for the proportionate share, and procedures for "a reasonably prompt decision by an impartial decisionmaker"); *Hohe v. Casey*, 956 F.2d 399, 408–409 (3d Cir.1992) (public-sector union cannot require arbitration as prerequisite to 1983 action); *Tierney v. City of Toledo*, 917 F.2d 927, 940 (6th Cir.1990) (public-sector union cannot require exhaustion of internal remedies prior to 1983 action). The Supreme Court based its decision in *Beck* on an interpretation of Section 8(a)(3) of the National Labor Relations Act, the statute permitting union security agreement. 29 U.S.C. § 158(a)(3). It did not address whether NLRA union security agreements implicate constitutional rights or involve state action.

*Price v. International Union, UAW*, 927 F.2d 88 (2d Cir.1991), is the only post-*Beck* decision which has, as yet, addressed the issue of NLRA union procedures for determining "financial core" payments. *Price* was initiated by employees who sought, *inter alia*, a declaratory judgment that the Union's post-*Beck* procedures were constitutionally and legally improper. The Court of Appeals for the Second Circuit determined that, while state action is present in public-sector unions, state action is not involved in NLRA union security agreements "and there are thus no constitutional concerns which warrant the safeguards found necessary in *Hudson*." 927 F.2d 88, 92 (1991). The court held that, with respect to the internal procedure a private-sector union institutes to handle disputes over nonmembers' fees, "it is necessary only that the procedures employed not be arbitrary, discriminatory, or implemented in bad faith." *Id.* The court in *Price* concluded by approving procedures similar to those adopted by plaintiff, which included an arbitration in which an arbitrator was selected by AAA procedures. *Id.*

Commentators who have considered whether the *Hudson* procedures should apply to private-sector unions and whether state action is present in union security agreement disputes under the NLRA have disagreed. *See* Kenneth G. Dau–Schmidt, *Union Security Agreements Under The National Labor Relations Act: The Statute, the Constitution, and the Court's Opinion in Beck,* 27 Harv.J. on Legis. 51 (1990); Elena Matis, *Procedural Rights of Fair Share Objectors After Hudson and Beck,* 6 Lab.Lawyer 251 (1990); David H. Topol, *Union Shops, State Action, and the National Labor Relations Act,* 101 Yale L.J. 1135 (1992).

The instant case does not require or permit assessment of the Union's internal Procedure for determining "financial core" payments. Unlike *Price,* it is not an action for a declaratory judgment. Whether or not NLRA union security agreements are to be treated like those in public-sector unions, and whether or not the Union can require exhaustion of its internal Procedure, this Court does not have jurisdiction under any applicable statute to enforce the arbitration at issue here.

### Conclusion

Plaintiff's objections are overruled and the Magistrate Judge's Report and Recommendation is APPROVED and ADOPTED by this Court.

Defendants' motions for summary judgment are GRANTED in Case No. 1:91–CV–623 and Case No. 1:92–CV–653. A Judgment refusing to confirm the arbitration awards of July 17, 1990, and October 2, 1991, will be entered in accordance with this Opinion.