UNITED FOOD AND COMMERCIAL
WORKERS LOCAL 951, AFL–CIO
AND CLC, Plaintiff–Appellant,

v.

Phillip MULDER; Charles Buck; and
Leon Gibbons, Defendants–
Appellees.

No. 93–1308.

United States Court of Appeals,
Sixth Circuit.

Argued June 21, 1994.

Decided July 15, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 23, 1994.

Ted Iorio, Christine A. Reardon (argued and briefed), Kalniz, Iorio & Feldstein, Toledo, OH, for plaintiff-appellant.

Margery E. Lieber, N.L.R.B., Office of the General Counsel, Washington, DC, for intervenor.

Glenn M. Taubman (argued and briefed), National Right to Work Legal Defense Foundation, Springfield, VA, Sam F. Massie, Jr., Allaben, Massie, Vander, Weyden & Timmer, Grand Rapids, MI, for defendants-appellees.

Before: MARTIN, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.

DAUGHTREY, Circuit Judge.

In this appeal, we are asked to determine whether, in a "service fee" dispute between a labor union and non-union employees, a federal district court has subject matter jurisdiction to confirm the decision of an arbitrator selected pursuant to an internal union procedure to which the non-union employees did not agree to be bound. The action arose when the plaintiff-appellant, a labor union, filed an action seeking judicial confirmation of the amount of its rebate to the defendants-appellees, non-union employees who objected to the amount of the "service fee" that the union assessed them. The union asks us to reverse the district court's decision to grant the employees' motion for summary judgment, which was based on the court's determination that it lacked subject matter jurisdiction over this dispute. We agree with this determination and affirm.

The defendants are three non-union employees of Meijer, Inc. The plaintiff, Local 951, is the union that represents the bargaining unit in which the defendants work. Local 951 and Meijer, a non-party to this lawsuit, entered into a collective bargaining agreement that contained a "union security" clause requiring Meijer employees to join the union or pay "service fees" to defray the cost of collective bargaining on their behalf.

When the defendants objected in writing to the amount of the fee, the union set into motion its internal procedure for handling such objections. The last step in the union's "service fee rebate procedure" required arbitration by an arbitrator to be selected by the American Arbitration Association. The union's procedure also required non-union members to exhaust the union's rebate procedure before seeking judicial review of the fee dispute. Although one of the defendants orally agreed to arbitrate, none of the defendants signed an agreement to arbitrate or an agreement to allow arbitration to bind them by court order.

The union nevertheless went forward with its rebate procedure and, as a result, two arbitrators upheld the amount of the union's service fees assessed against the defendants. After the arbitrators issued their decision, the union brought action in federal district court to confirm the awards. The magistrate judge to whom the matter was referred found that because the defendants had never agreed to arbitrate the dispute, no true arbi-

tration award existed to be confirmed. He recommended that the district court grant the defendants' motion for summary judgment for lack of subject matter jurisdiction. The district judge agreed and dismissed the case. 812 F.Supp. 754. The union now appeals.

In *Communications Workers of America v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), the United States Supreme Court held that § 8(a)(3) of the National Labor Relations Act authorizes a union to exact from non-union employees represented in a bargaining unit "those fees and dues necessary to 'performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.'" *Id.* at 762–63, 108 S.Ct. at 2657 (citing *Ellis v. Ry. Clerks,* 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984)). By thus limiting the amount of dues a union can charge a non-union member, the Court exempted non-members from those parts of union dues that contribute to political activities, while simultaneously preventing a "free rider" problem. *Beck* held that when a union exacts fees in excess of the amount necessary to perform collective bargaining activities, it violates its duty of fair representation to all members of the bargaining unit.

■ *Beck* was the first case to address this limitation on "union security" clauses in the context of private sector employment. In public sector employment cases, where "the actions of public employers surely constitute 'state action'," the Court had previously held that First Amendment principles prevent unions from collecting service fees "for the support of ideological causes not germane to [the union's] duties as collective-bargaining agent." *Ellis v. Ry. Clerks,* 466 U.S. 435, 447, 104 S.Ct. 1883, 1891, 80 L.Ed.2d 428 (1984); *Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 235, 97 S.Ct. 1782, 1799–1800, 52 L.Ed.2d 261 (1977). At least in public sector employment, the Court requires unions to create methods of dispute resolution available to non-members who object to the amounts of service fees. In *Chicago Teachers Union, Local No. 1 v. Hudson,* 475

U.S. 292, 310, 106 S.Ct. 1066, 1077, 89 L.Ed.2d 232 (1986), the Court held that "the constitutional requirements for the Union's collection of agency fees include ... a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker...."

The union in this case, Local 951, has presumed that this requirement is equally applicable to private sector unions. It argues that, given its authority to exact a service fee from the defendants, it can bind them to the internal procedure that it has developed for resolving disputes over the amount of the fee and, consequently, can prevent the defendants from challenging the fee before the N.L.R.B.

The district court, however, rejected each of the justifications put forward by the union to support judicial confirmation of its internal procedure. As a result, the district court determined, properly we think, that it does not have subject matter jurisdiction to hear the case.

1. *The Duty of Fair Representation*

■ The plaintiff's first argument is that because *Hudson* requires a union in a public sector employment setting to provide "a reasonably prompt opportunity to challenge the amount of the [service fee]," and because *Beck* holds that the failure to do so violates the union's duty of fair representation, then non-union members must be bound to the union's choice of dispute resolution. The union emphasizes, first, that the N.L.R.B. often defers to arbitration,[1] and second, that the Supreme Court has endorsed informal dispute resolution as a method of solving fee disputes. *See Abood,* 431 U.S. at 242, 97 S.Ct. at 1803. Therefore, the union concludes, it can bind non-union employees to its chosen procedures as an inherent part of its duty of fair representation under its collective bargaining agreement with Meijer.

The problem with this proposition is that it confuses the union's presumed responsibility to provide a means of dispute resolution with its ability to *force* non-union members to use its selected method. At least one court has

1. *See, e.g., Collyer v. Insulated Wire,* 192 N.L.R.B. No. 150 (1971).

held that this duty on the part of the union does not create a corresponding ability to force unwilling parties to comply with the established procedure. In *Abrams v. Communications Workers of America*, 818 F.Supp. 393, 407 (D.D.C.1993), the district court held that the union

> may have statutory authority to require nonmembers to pay agency fees, but that statutory authority cannot be extended to force nonmembers to follow [the union's] choice of dispute resolution.... [The union] must get nonmembers' permission before it can refer fee disputes to arbitration.

While the *Abrams* court recognized a "strong public policy preference for arbitration of labor disputes" in order to promote their "peaceful resolution," it insisted that when labor unrest is not threatened, as in a fee dispute, then arbitration is not as essential. In addition to *Abrams*'s reasoning, the *Hudson* case, requiring public sector employees' unions to develop fee rebate procedures for non-members, does not require the use of the procedures, but requires only that procedures be made available. *See Hudson*, 475 U.S. at 308, 106 S.Ct. at 1076. Finally, rather than limiting employees to a union's choice of forum, as the plaintiff asserts, the Supreme Court has acknowledged that employees have potentially more than one forum in which to litigate unfair labor practice claims. *Vaca v. Sipes*, 386 U.S. 171, 179–80, 87 S.Ct. 903, 910–11, 17 L.Ed.2d 842 (1967); *Smith v. Evening News Ass'n.*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962). Thus, the union cannot unilaterally impose a means of resolution, and deprive non-members of the use of other fora.

### 2. *Section 301 of the L.M.R.A.*

The union's second argument in support of subject matter jurisdiction is that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), contains a broad mandate for federal courts to decide labor issues arising out of collective bargaining agreements. Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may

be brought in any district court of the United States having jurisdiction over the parties....

The union cites legislative history emphasizing the development of a federal common law regarding labor issues, and then argues that suits to enforce this type of "arbitration" award should be decided under federal law pursuant to § 301. The union also cites *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957), a case in which the Supreme Court compelled an employer to arbitrate with the union in accordance with a collective bargaining agreement, in support of its contention that federal courts have jurisdiction to enforce arbitration awards pursuant to collective bargaining agreements. Although the arbitration procedure used in this case was not outlined in the collective bargaining agreement, the union insists that because the defendants are obligated to support the "union security" clause in the collective bargaining agreement, they should be bound to any fee dispute resolution mechanism that the union develops.

The union's arguments overlook several important facts. First, although § 301 permits the enforcement of arbitration clauses in collective bargaining agreements between employers and unions, no agreement to arbitrate existed between the parties in this case. Arbitration requires a contract between the parties. In *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648–49, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)), the Court held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit...." *See also Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). Thus, the union's argument that arbitration "emanate[d]" from the collective bargaining agreement ignores the fact that these defendants never agreed to settle their dispute by the union's method.

Secondly, the union overlooks that fact that the non-member employees are *not signatories* to the collective bargaining agreement, and consequently, under current case law, are not bound to the contract. In *Service, Hospital, Nursing Home and Public Employees Union, Local No. 47 v. Commercial Property Services*, 755 F.2d 499 (6th Cir.1985), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985), this court held:

> [A] district court does not have subject matter jurisdiction over a non-signatory to a collective bargaining agreement, where no rights or duties of the non-signatory party are stated in the terms and conditions of the contract.

*Id.* at 506.[2] *See also Int'l Union, United Mine Workers of America v. Covenant Coal Corp.*, 977 F.2d 895, 897 (4th Cir.1992) (finding no § 301 jurisdiction over non-signatories for tortious interference with contract; "[i]t is axiomatic that only a party to a contract can violate that contract"). Although the union argues that the "union security" clause is a sufficient basis for jurisdiction because it outlines the rights and duties of non-union employees, that clause obligates the *employer* to fire non-contributing employees. The agreement does not bind the defendants, nor does it state their rights and duties under the rebate procedure.

Although *Commercial Property* governs the grant of jurisdiction in § 301 cases involving non-signatories, the union contends that case law from other circuits suggests that jurisdiction is appropriate over these non-signatories. *See, e.g., Painting & Decorating Contractors Assoc. of Sacramento, Inc. v. Painters and Decorators Joint Committee of the East Bay Counties, Inc.*, 707 F.2d 1067 (9th Cir.1983) (en banc); *cert. denied*, 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984);[3] *Wilkes–Barre Publishing Co. v. Newspaper Guild of Wilkes–Barre, Local 120*, 647 F.2d 372 (3d Cir.1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982).[4] This court distinguished these cases in *Commercial Property*, however, and insisted that the Sixth Circuit applies "a much narrower interpretation of the scope of section 301 jurisdiction." In *Commercial Property*, we observed that the other cases cited by the union involved close relationships between non-signatory parties and the signatory parties. *Id.* at 506. That close relationship is clearly not present here.

In addition to these cases, the union's supplemental authority indicates that it has ignored the inapplicability of § 301 to non-signatories to the collective bargaining agreement in its effort to emphasize the expansive interpretation of § 301 jurisdiction. The union cites, for example, *In re General Motors*

**2.** In *Commercial Property*, the union sued a non-union company that was not a signatory to the union's collective bargaining agreement, and that had underbid the union's employer on a job contract. The union alleged that the non-signatory employer had a "close relationship" with the signatory employer and should therefore be bound by the contract. The court held that § 301 jurisdiction would only be appropriate if the non-signatory employer was the "alter ego" of the signatory. *Id.* at 505.

**3.** In *Painting and Decorating*, the plaintiff, a multi-employer trade group, sued the other parties with which it had a collective bargaining agreement, as well as the Joint Committee established to interpret the agreement, alleging that the Committee had erroneously interpreted the agreement. In reviewing the appropriateness of § 301 jurisdiction in a suit against the non-signatory Joint Committee, the court found the Committee's non-signatory status to be irrelevant and based its finding of § 301 jurisdiction on the subject matter of the suit. The Ninth Circuit

held that jurisdiction existed as long as the suit concerned the terms of an employer-union agreement that was significant for labor peace. *Id.* at 1070–72.

**4.** In *Wilkes–Barre*, a newspaper publisher sued the newspaper guild with which it had a collective bargaining agreement, as well as other local unions, which participated in a strike during the renegotiations of the agreement. The publisher also sued a newly-formed council of union leaders who began to publish a rival newspaper. The employer charged the guild with refusing to bargain in good faith, and sued the other unions and the council for encouraging a breach of the collective bargaining agreement and tortiously interfering with the contract. Although § 301 jurisdiction over the claim against the bargaining union was clear, the court exercised jurisdiction over the claims against the council as well, finding it to be "in the same position as the unions." *Id.* at 379. The court exercised jurisdiction over the tortious interference claim because the claim involved the federal common law of labor contracts. *Id.* at 381.

*Corp.,* 3 F.3d 980 (6th Cir.1993), a case in which this court found § 301 jurisdiction to exist when a General Motors' employee alleged that G.M. had violated his confidentiality as a participant in an "employee assistance program." The union and G.M. had bargained for the program in the collective bargaining agreement and, therefore, the court found it to be a contract over which it had jurisdiction. In *General Motors,* however, the plaintiff-employee was a union member and thus bound by the collective bargaining agreement. Hence, *General Motors* indicates that a party be a union member before being bound by the collective bargaining agreement.

In addition to *General Motors,* the union cites as supplemental authority *Hotel & Restaurant Employees Union Local 217 v. J.P. Morgan,* 996 F.2d 561 (2d Cir.1993), for an expansive reading of § 301 jurisdiction. In *Morgan,* the Second Circuit upheld § 301 jurisdiction in a case concerning a neutrality agreement, which is an agreement between the union and employer governing how a union can establish majority status without conducting an election. The union argues that the *Morgan* case illustrates that § 301 provides jurisdiction over supplemental agreements between a union and its employer. In *Morgan,* however, the court enforced the agreement only against parties to the contract, thus distinguishing it from this case involving non-signatories. Hence, *Morgan* does not aid the union in its assertion of § 301 jurisdiction in this case.

 In addition to the union's failure to acknowledge the appellees' non-signatory status and the absence of an agreement to arbitrate disputes, the union also ignores the fact that it cannot assert § 301 jurisdiction against individual employees in an action for money damages. Section 301 was created to make collective bargaining agreements binding on unions and employers equally. *See Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 454, 77 S.Ct. 912, 916, 1 L.Ed.2d 972 (1957). Although § 301 contemplates suits between unions and employers for breaches of collective bargaining agreements, it also permits individual employees to sue as third-party beneficiaries of collective bargaining agreements. *See Smith v. Evening News Ass'n.,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). However, neither employers nor unions may sue individual employees in damage suits. In *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), a trucking company attempted to allege a breach of a collective bargaining agreement in a suit against individual wildcat strikers. The Court dismissed the claim for lack of jurisdiction, stating that § 301 was intended to shield individual strikers from damage suits. *Id.* at 415, 101 S.Ct. at 1844; *see also Bldg. Material and Dump Truck Drivers v. Traweek,* 867 F.2d 500, 507–8 (9th Cir.1989). Thus, under *Reis,* even if these non-union employees were responsible under the contract for fees, they could not be sued in their individual capacities for damages.

Apparently recognizing the weakness of its argument, the union finally suggests that this case is not adversarial. In its brief before this court, the union argues that "[t]he proceedings below were not so much against the Objectors as against the awards themselves." It even calls the defendants "Adverse Parties–Appellees" in its brief. However, as the district court observed, the union does not seek a declaratory judgment that its rebate procedure is appropriate, but rather seeks enforcement of a decision against these specific employee-defendants.

Finally, in supplemental authority that challenges the union's assertion of § 301 jurisdiction, the non-union employees cite *Kunz v. U.F.C.W. Local 876,* 5 F.3d 1006, 1009 (6th Cir.1993), in which this court held that "[a]n employment contract between an individual and a labor organization does not fall within the jurisdiction of § 301." In that case, the union fired one of its own employees who later sued the union, alleging breach of the union's duty of fair representation and breach of its contractual obligations. Because the employee was not a member of the collective bargaining unit and, therefore, had no contract with the union, this court denied § 301 jurisdiction. Although the non-mem-

ber employees in this case were not employees of the union, the fact that they lacked a contract with the union positions this case outside the jurisdictional reach of § 301.

### 3. *Federal Arbitration Act*

 The union finally argues that jurisdiction is appropriate under the Federal Arbitration Act, 9 U.S.C. §§ 1–14. Contending that the "union security" clause in the collective bargaining agreement is sufficient authority for compulsory arbitration because the arbitration procedure "emanates" from the agreement, the union asserts that "[i]t is unnecessary for the Objectors to be signatory to an individual agreement to arbitrate."

The union's argument overlooks the language of 9 U.S.C. §§ 2 and 9, which require the existence of a written agreement to arbitrate and to enforce a final judgment before the federal courts will confirm an arbitration award. 9 U.S.C. § 2 states that

> [a] *written* provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such a contract . . . shall be valid, irrevocable and enforceable . . . (emphasis added).

In § 9, the Federal Arbitration Act specifies that

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award. . . .

Because none of the three defendants signed an agreement to arbitrate and to be bound by judgment of the court after arbitration, as is required for jurisdiction under the Federal Arbitration Act, the union's third justification for subject matter jurisdiction likewise fails.

We live in a world in which many forms of alternative dispute resolution are being developed and widely touted, both on the basis of cost-efficiency and on the basis of "customer satisfaction." It cannot be denied that binding arbitration would offer a reasonable mechanism for settling the service-fee dispute in this case. Unfortunately, not all the disputants have agreed to undergo arbitration, and we are unable to find any legal basis to require them to do so in the absence of an agreement. Hence, we conclude, as did the district court, that this action must be dismissed for lack of subject matter jurisdiction. We therefore AFFIRM the order of the district court granting summary judgment in favor of the defendants.