**Robert WICKHAM, Plaintiff,**

v.

**FORD MOTOR COMPANY, Local 36 of United Automobile, Aerospace, Agricultural Implement Workers of America, Gary Sommerville, Michael Stanley, Brock E. Roy, Defendants.**

No. CIV. 02–40212.

United States District Court,
E.D. Michigan,
Southern Division.

March 16, 2004.

Philip H. Seymour, Cooper, Shifman, Royal Oak, MI, for Plaintiff.

Connye Y. Harper, UAW International Union Legal Department, Daniel W. Sherrick, UAW International Union Legal Department, Detroit, MI, Jennifer A. Zinn, Ford Motor Company, Dearborn, MI, Louis Theros, Dickinson Wright, Rick A. Haberman, Dickinson Wright, Detroit, MI, for Defendants.

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff brings this action against his employer, Ford Motor Company ("Ford"),

against his Union, Local 36 of the United Automobile, Aerospace, Agricultural Implement Workers of America ("Local 36" of the "UAW"), and against three individuals who served as President, Committeeman, and Plant Chairman for Local 36 ("individual Defendants"). Before the Court are two motions for summary judgment, one by Defendant Ford and one by Local 36 on behalf of the local union and the individual Defendants. The Court conducted a hearing on these motions on January 16, 2004. For the reasons stated below, the Court will grant both motions.

## I. BACKGROUND

Plaintiff Robert Wickham began working for Ford in July, 1978 at the Wixom Assembly Plant. He became a member of the UAW and of Local 36 shortly after obtaining this employment. In 1995, Plaintiff was involved in an automobile accident that killed his girlfriend and her unborn child. As a result of this accident, Plaintiff was charged with leaving the scene of a serious accident, negligent homicide, and driving with a suspended license. Plaintiff entered into a plea bargain and served about two months of incarceration. Ford denied Plaintiff work release during this period of incarceration. Ford allegedly did so because another employee at the plant, who was the brother of Plaintiff's deceased girlfriend, allegedly threatened bodily harm to Plaintiff. The Union filed a grievance on behalf of Plaintiff regarding this denial. Plaintiff returned to work with Ford in November, 1996.

In 1998, Plaintiff was sentenced to an additional period of six months of incarceration for violating the terms of his probation. Plaintiff claims that two weeks before commencing this sentence, he sought a leave of absence from Ford for the period of his incarceration. Specifically, Plaintiff claims that he spoke with his union committeeman almost daily and spoke with his local union president once. He claims that the committeeman gave him blank leave of absence forms, instructed him to sign them, and promised to file the forms with Ford's Labor Relations Department. Since a leave of this length had to be requested in increments, Plaintiff allegedly signed two requests for leave and gave them to his committeeman. The committeeman gave Plaintiff a card with the committeeman's name and telephone number, so that Plaintiff's mother could contact the committeeman if there were questions. Plaintiff did not contact anyone at Ford regarding the leave of absence request.

Plaintiff's incarceration began on October 14, 1998. His last day of work prior to his incarceration was October 12, 1998. For a total of eight working days beginning on October 14, 1998, Plaintiff's absences were coded as excused absences. Plaintiff's supervisor testified that he coded the absence in this way because Plaintiff was a good employee. Beginning October 26, 1998, Plaintiff's absences were coded as away without leave ("AWOL") until his termination.

On November 9, 1998, Ford issued a five-day quit notice to Plaintiff. The quit notice was received by Plaintiff's mother. Plaintiff's mother called Plaintiff's committeeman approximately fifteen times, using the card and telephone number that were allegedly provided to Plaintiff. She was allegedly assured not to worry about Plaintiff's job or leave of absence. Ford ultimately terminated Plaintiff for failing to respond to the quit notice.

After Plaintiff was released from incarceration he contacted the chairman of his local union about his job. Plaintiff requested that the union file a grievance regarding his discharge. The union did so and conducted an investigation, which Plaintiff claims was inadequate. The local union pursued this grievance through the

first two stages, and then submitted the grievance to the international union to pursue through the third stage. The international union withdrew the grievance without prejudice at the third stage in December, 2001. The union did so based on the precedent of arbitration decisions establishing that Ford is not required to reinstate an employee who is absent due to incarceration for an extended period. Plaintiff was notified of this decision in January, 2002. Plaintiff sent a letter to the union regarding this decision in July, 2002. The parties acknowledge that this letter was an untimely appeal and that Plaintiff did not exhaust his internal union appeals.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to

the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

At the outset, the Court notes that jurisdiction is proper in this matter based on the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Labor Management Relations Act 29 U.S.C. § 185.

### A. FAILURE TO EXHAUST UNION REMEDIES

■ To evaluate the motion by Local 36 for summary judgment, the Court will begin with the threshold issue of whether Plaintiff has failed to exhaust his internal union appeals and whether this failure is excused. An employee is required to exhaust grievance and arbitration procedures before initiating a suit against his union or employer. *Clayton v. Int'l Union*, 451 U.S. 679, 681, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). Plaintiff's brief "admits that [Plaintiff] did not exhaust his intraunion remedies." Pl. Resp. at 14. Instead, Plaintiff claims that his failure to exhaust his union remedies is excused. Failure to exhaust union remedies can be excused if such exhaustion would be futile or when the union breaches a duty of fair representation. *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 753 (6th Cir.1996); *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

The union provides multiple levels of appeal to review grievances against the union. Plaintiff had the opportunity to appeal the union's decision to withdraw his grievance and could also appeal or grieve any actions by the individual Defendants. The UAW Constitution gives members the right to challenge the actions of a local union at a local membership meeting. If the membership rejects this challenge, the member can further appeal to the International Executive Board ("IEB"). Additionally, actions of the International Union can be appealed directly to the IEB. If a member is dissatisfied with a decision of the IEB, the matter can be appealed to the Convention Appeals Committee or to the Public Review Board.

There are, however, time limits for these appeals. Specifically, appeals to the IEB must be made within thirty days of notice of the event regarding which the member seeks appeal. On July 30, 2002, almost six months after receiving notice that his grievance had been withdrawn, Plaintiff sent a facsimile to an International Union Representative requesting review. This appeal was denied as untimely. Decisions regarding timeliness are also appealable, but Plaintiff did not appeal that decision.

■ The Court will first address the excuse of futility. The Sixth Circuit "requires a 'clear and positive showing' that pursuit of grievance procedures would be futile before allowing access to federal courts." *Wilson*, 83 F.3d at 753 (citations omitted). In this case, Plaintiff has not demonstrated that his recourse to the grievance procedures was clearly and positively futile.

Plaintiff complains of the conduct of local union officials in the handling of his grievance. This Court, however, does not consider an appeal to the local membership or to the IEB regarding this complaint to be clearly futile. The membership and the

IEB are not under the control of the individual Defendants about whom Plaintiff sought to complain. Furthermore, Plaintiff's allegations do not demonstrate that the higher levels of the union's appeal procedures or the membership would be unfair in their evaluation of Plaintiff's grievance. Thus, the Court determines that Plaintiff is not entitled to the excuse of futility.

■ The Court next addresses the excuse of a breach of the duty of fair representation. The Supreme Court has stated that a Plaintiff's failure to exhaust union remedies can be excused "if the union as bargaining agent breached its duty of fair representation in the handling of the employee's grievance." *Vaca* 386 U.S. at 186, 87 S.Ct. 903. The Supreme Court later restated this principle as "an employee's failure to exhaust the contractual grievance procedures would bar his suit except when he could show that the union's breach of fair representation had *prevented* him from exhausting those remedies." *Bowen v. USPS,* 459 U.S. 212, 222, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983) (emphasis added). In this formulation, the Supreme Court appears to require that the breach affirmatively "prevent" the employee from exhausting the internal union appeals.

In this case, the only specific prejudice Plaintiff cites regarding the handling of his grievance is in the content of grievance submitted. That is, Plaintiff claims that the grievance should have included the fact that the union committeeman allegedly promised and then failed to submit the leave of absence forms for Plaintiff. Plaintiff claims that there is "evidence of hostility of union officials particularly in the context of conflict of interest." Pl. Resp. at 15. While a conflict of interest may be present with the individual Defendants, there is no evidence that this alleged hostility or conflict would affect the internal

appeals process, particularly at the international level.

Furthermore, the alleged breaches do not appear to have "prevented" Plaintiff from exhausting his union remedies. *Bowen,* 459 U.S. at 222, 103 S.Ct. 588. In fact, the appeals process was removed from the individual Defendants that Plaintiff alleged caused the particular breaches. *Findlay v. Jeep Corp.,* 754 F.2d 373, 1984 U.S.App. LEXIS 13494 (6th Cir.1984) (unpublished) ("there is no allegation that the International Executive Board, the Public Review Board or the Convention Appeals Committee were hostile" to Plaintiff).

Because Plaintiff's failure to exhaust his internal union remedies are not excused, the Court will grant summary judgment to Local 36. Accordingly, the Court will not address the merits of the claims against the union.

## B. CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

■ The next issue is whether Plaintiff can maintain a lawsuit against individual union officials. The Labor Management Relations Act states that "[a]ny money judgment against a labor organization ... shall be enforceable only against the organization as an entity and its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b). While this section does not expressly prohibit suits against individual union members, Defendants argue that Courts have interpreted this section as precluding such actions for damages resulting from union misconduct. Defendants cite to *United Food & Commercial Workers Local 951 v. Mulder* as Sixth Circuit authority for the proposition that union officials should not be held individually liable. *United Food and Commercial Workers Local 951 v. Mulder,* 31 F.3d 365, 370 (6th Cir.1994). Besides citing to this

page, Defendants do not elaborate on how this case precludes individual liability. The page cited states that unions and employers are precluded from suing individual employees for money damages. *Id.* The case, however, does not address the issue of an individual employee suing individual union representatives. The Sixth Circuit does not appear to have directly addressed this issue.

Other circuits have directly addressed the issue of the liability of individual union representatives. The Ninth Circuit held that "the language of section 301(b) ... provide[s] a shield for individual union members in suits for breach of the duty of fair representation.... [and] extends to state tort claims against union officials and members brought in conjunction with a section 301 claim of breach of duty against a union." *Evangelista v. Inlandboatmen's Union,* 777 F.2d 1390, 1400 (9th Cir.1985). Another Court in this district cited this Ninth Circuit case in an unpublished decision holding that "individual union officers and members are immune from liability for breach of the duty of fair representation." *Flores v. Midwest Waterblasting Co.,* No. 93–72586, 1994 U.S. Dist. LEXIS 17704, at *35 (E.D.Mich. Sept. 26, 1994) (Edmunds, J.) (citations omitted).

The Supreme Court has prohibited individual union members from being held individually liable to an employer for their individual violations of a no-strike provision in a collective bargaining agreement. *See Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 417, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981). Although the case addresses individual liability in the context of a strike, the Supreme Court addresses various reasons for not holding individual union members liable. *Id. passim.* The reasoning relies heavily on legislative history and policy reasons. The opinion suggests that the statute was not intended to create individual liability, at least in the strike context. *Id.* at 415, 101 S.Ct. 1836.

In contrast, the Court cannot find authority supporting the proposition that individual union members should be held individually liable. Plaintiff cites *Hines v. Anchor Motor Freight, Incorporated* as authority for the proposition that an action against the individual Defendants is proper. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Plaintiff specifically cites the statement that "[s]ection 301 contemplates suits by and against individual employees as well as between unions and employers." *Id.* at 562, 96 S.Ct. 1048. The Supreme Court addressed this sentence in *Complete Auto Transit* and clarified its scope by stating that section "301 does not contemplate recovery of *damages* from individual employees." *Complete Auto Transit,* 451 U.S. at 415, n. 17, 101 S.Ct. 1836 (emphasis in original). The Court, therefore, does not consider *Hines* to provide authority for a suit for damages by an individual employee against individual union representatives.

Furthermore, "individual employees" are distinct from individual union representatives. Since individual employees cannot be held liable for damages resulting from their actions, it would seem that *a fortiori* union representatives should not be held liable in their individual capacity for actions done on behalf of the union. Accordingly, this Court determines that Plaintiff is not entitled to damages against the individual Defendants and will grant the motion for summary judgment brought on their behalf by Local 36.

## C. CLAIMS AGAINST FORD

■ Plaintiff also brings claims against Defendant Ford for "breach of duty." Plaintiff alleges that Ford and Local 36 conspired to conceal Plaintiff's absences

and to violate the collective bargaining procedure to obtain leaves of absence. The collective bargaining agreement between Ford and the UAW articulates a procedure for obtaining a leave of absence. This procedure imposes a duty on the employee: the employee "*shall make application to his/her supervisor* on a form to be provided for that purpose *and shall then take the signed form to the employment office* for his/her official leave of absence slip." Def. Ford's Ex. C at 88. This section requires the employee to contact his supervisor and the employment office. Plaintiff, however, admits in his deposition that he never spoke to anyone at Ford about taking a leave of absence in 1998. Plaintiff therefore did not follow the procedures in the agreement. Accordingly, the Plaintiff cannot succeed in alleging that Ford breached a duty to him regarding this leave of absence request.

■ Even if Plaintiff had followed the proper procedures, Ford had the discretion to deny Plaintiff's request. Plaintiff required a leave of absence longer than 180 days. The collective bargaining agreement provides that "[l]eave of absence *may* be granted for personal reasons for a period *not to exceed 150 days* upon application of the employee and approval of the Management." *Id.* (emphasis added). Leaves over 150 days also "*may* be granted," but only "*if* required for the purpose of traveling to a foreign country." *Id.* (emphasis added). Thus, to obtain a leave for the full period of his incarceration, Plaintiff would have had to submit two leave of absence forms. Even if he had, there is nothing in the collective bargaining agreement that would require Ford to grant a leave of absence due to incarceration. Additionally, there is clear precedent in the interpretation of Ford's collective bargaining agreement that Ford can deny leaves of absence for those serving time in prison or jail. The Court concludes that Ford does not have a duty to grant Plaintiff this leave of absence that was not properly requested, and consequently did not breach a duty.

■ Plaintiff asserts that because his absences were initially coded as excused and because the five-day quit notice was not sent within five days, there is evidence of a scheme to conceal his absences until the processing of his leave of absence forms. Plaintiff's supervisor, however, testified that he initially coded the absence as excused because he was a good worker. Additionally, the evidence indicates that quit notices are only processed periodically, not daily, and that a delay in processing these notices is not unusual. Against this unrefuted testimony, Plaintiff's vague allegations of a conspiracy are insufficient to create a genuine issue of material fact.

Plaintiff also argues that this case is analogous to *Hines*, arguing that in *Hines* the employer was found liable for participating in a grievance procedure in which the union failed to adequately investigate the charges. *Hines*, 424 U.S. 554, 96 S.Ct. 1048. In *Hines*, however, the Supreme Court stated that the employer "*originated* the discharges for dishonesty. If those charges were in error, [the *employer] has surely played its part in precipitating the suit.*" *Id.* at 569, 96 S.Ct. 1048. *Hines* is distinguishable because the employer in that case took affirmative acts that precipitated the grievance proceeding. In this case, Ford has been passive; Plaintiff admits that he never spoke with anyone at Ford and there is no material evidence of a conspiracy.

Plaintiff next argues that *Hines* requires that if there is a question as to whether the union breached its duty of fair representation, then it follows that the grievance procedure is flawed. Pl's Resp. at 7. Plaintiff then argues that if the grievance procedure in this case is flawed, then there is sufficient evidence to maintain a suit

against the employer. *Id.* The Supreme Court, however, later stated that their holding "in no way implies ... that a fair representation action *requires* a concomitant claim against an employer for breach of contract." *Breininger v. Sheet Metal Workers Int'l Assoc. Local Union No. 6,* 493 U.S. 67, 80, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989) (emphasis in original). Plaintiff's interpretation of *Hines* would ultimately entail that any breach by the union of its duty necessarily leads to a case against the employer. This, however, seems incorrect based on *Breininger.* For these reasons, the Court will grant Ford's motion for summary judgment.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED**, that the motion for summary judgment by Local 36 on behalf of the Union and the individual Defendants [docket entry 17] is **GRANTED.**

**IT IS FURTHER ORDERED** that the motion for summary judgment by Defendant Ford [docket entry 18] is **GRANTED.**

**SO ORDERED.**

### JUDGMENT

This action having come before this Court, the Honorable Paul V. Gadola presiding, the issues having been fully presented, the Court being fully advised in the premises, and a ruling having been duly rendered, **IT IS ORDERED AND ADJUDGED** that Plaintiff Robert Wickham **TAKE NOTHING** from Defendants, that Defendants recover of Plaintiff Robert Wickham their costs of action, and that the action against Defendants be **DISMISSED** on the merits.