TEAMSTERS-EMPLOYER LOCAL NO. 945 PENSION FUND; Local 945 I.B. of T. Welfare Fund and Local 945 International Brotherhood of Teamsters, Petitioners,

v.

ACME SANITATION CORP., Defendant.

Civil Action No. 95–5744(AJL).

United States District Court,
D. New Jersey.

Feb. 24, 1997.

Gary A. Carlson, Kroll & Heineman, West Orange, NJ, for Petitioners.

Gerald L. Dorf, Sandra Polledri, Dorf & Dorf, P.C., Rahway, NJ, for Respondent.

## OPINION

LECHNER, District Judge.

This action arises from a petition ("Petition"), filed by Teamsters–Employers Local No. 945 Pension Fund (the "Pension Fund"), Local 945 I.D. of T. Welfare Fund (the "Welfare Fund") (collectively, the "Funds"), and Local 945, International Brotherhood of Teamsters ("Local 945") (collectively, the "Petitioners"), seeking to confirm an arbitration award entered against defendant, Acme Sanitation Corp ("Acme"). Petitioners allege confirmation is proper pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9 ("Section 9"), Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(e) and (f) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. § 1132(e) and (f).

Pursuant to Rule 12N, Appendix N of the General Rules Governing the District of New Jersey, Petitioners filed a motion to confirm the arbitration award ("Motion to Confirm the Arbitration Award"). Acme filed opposition to the Petition and a cross-motion to vacate the arbitration award and dismiss the Petition ("Motion to Vacate the Arbitration Award").[1] For the reasons set forth below, the Motion to Confirm the Arbitration Award

is denied and the Motion to Vacate the Arbitration Award is granted. The Petition is dismissed without prejudice. The parties are directed to reopen the arbitration proceedings to allow Acme the opportunity to present its defenses.

*Facts*

### A. *Parties*

### 1. *Local 945*

Local 945 is a labor organization representing employees in an industry affecting commerce within the meaning of Section 301. Petition, ¶ 3. Local 945 has an office and place of business in Wayne, New Jersey. *Id.*

### 2. *Pension Fund*

Pension Fund is a trust fund within the meaning of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and an employee pension benefit plan within the meaning of Section 3(2), (3), and (37) of ERISA, 29 U.S.C. § 1002(2), (2), and (37). Petition, ¶ 4. The Pension Fund is administered in Wayne, New Jersey.

### 3. *Welfare Fund*

The Welfare Fund is a trust fund within the meaning of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and an employee welfare benefit plan within the meaning of Section 3(2), (3), and (37) of ERISA, 29 U.S.C. § 1002(2), (2), and (37). Petition, ¶ 5. The Welfare Fund is administered in Wayne, New Jersey. *Id.*

### 4. *Acme*

Acme is in the waste disposal industry and is an employer within the meaning of the LMRA and ERISA. Petition, ¶ 6. Acme

---

1. In opposition to the Petition, Acme filed: Brief on Behalf of Respondent in Opposition to the Petition to Confirm Arbitration Award and in Support of its Cross–Motion to Vacate the Arbitration Award and Dismiss the Petition ("Respondent's Brief"), with Exhibits 1 though 16 attached; Brief on Behalf of Respondent in Reply to Opposition to Its Cross Motion to Vacate the Arbitration Award and Dismiss the Petition ("Respondent's Reply Brief").

In support of the Petition and in response to Respondent's Brief, the Petitioners' submitted: Brief on Behalf of Petitioners in Rely to Opposition to the Petition to Conform Arbitration Award and in Opposition to Cross Motion to Vacate the Arbitration award and Dismiss the Petition ("Petitioner's Brief").

maintains an office and place of business in Jersey City, New Jersey. *Id.*

### B. *The Collective Bargaining Agreements*

On 1 July 1990, Acme and Local 945 entered into a written collective bargaining agreement ("1990 CBA"). *Id.*, ¶ 7; 1990 CBA, attached as Exhibit 1 to Respondent's Brief. The 1990 CBA was effective from 1 July 1990 through 30 June 1993. *Id.*, ¶ 7; 1990 CBA. In 1993, the 1990 CBA was replaced by a second collective bargaining agreement (the "1993 CBA") (collectively, the "Collective Bargaining Agreements"), which was effective from 1 July 1993 through 30 June 1996. *See* 1993 CBA, attached as Exhibit 2 to Respondent's Brief.

The 1993 CBA was negotiated by an association of waste disposal companies called the Solid Waste Management Bargaining Group (the "Bargaining Group"). *Id.* With the exception of wage increases and several minor revisions not relevant to this Petition, the 1990 CBA and the 1993 CBA were identical.

Pursuant to Article 15 of the Collective Bargaining Agreements ("Article 15"), Acme agreed to contribute funds on behalf of its bargaining unit employees into the Pension Fund and the Welfare Fund. Petition, ¶ 7. These contributions financed retirement, medical and other related benefits that are available to the Funds' participants and beneficiaries. *See* 1990 CBA, Article 15, at 12–13; 1993 CBA, Article 15, at 12–13. Acme agreed to maintain records of these contributions. *See* 1990 CBA, Article 16, at 13–14; 1993 CBA, Article 16, at 13. In addition, Acme agreed to make those records available to representatives of Local 945 or the Funds for inspection. *Id.*

The Collective Bargaining Agreements also required disputes between Local 945 and Acme to be resolved through a formal grievance procedure, culminating in arbitration, if necessary. *See* 1990 CBA, Article 26, at 20; 1993 CBA, Article 26, at 18. The procedure required a grievance to be presented to various representatives of Acme and Local 945 in an effort to negotiate a settlement acceptable to both parties. *See* 1990 CBA, Article 26, ¶ A, at 20–21; 1993 CBA, Article 26, ¶ A, at 18. If the grievance could not be resolved between the parties, either Acme or Local 945 could submit the matter to binding arbitration for a resolution. *Id.*

In the event that arbitration became necessary, a list of nine proposed arbitrators was to be obtained from the Federal Mediation and Conciliation Service or, if both parties agreed, from the New Jersey State Board of Mediation ("Board of Mediation"). *See* 1990 CBA, Article 26, ¶ B(5), at 18–9; 1993 CBA, Article 26, ¶ B(S), at 18–19. Acme and Local 945 would alternate striking the names of proposed arbitrators from the list. The last remaining arbitrator would preside over the dispute. *Id.*

The Collective Bargaining Agreements also required the grievance and arbitration procedure to be the "sole and exclusive" method to resolve disputes between Acme and Local 945:

> The grievance and arbitration procedure above set forth shall be the sole and exclusive means for the determination of all disputes, complaints, controversies, claims or grievances whatsoever, including a claim based upon an alleged breach of this Agreement. Neither party nor any individual employee shall constitute an action or proceeding in a court of law or equity, state or [F]ederal, or before an administrative tribunal, other than to compel arbitration, as provided in this Agreement, or with respect to the award of an arbitrator. This provision shall be [a] complete defense to, and also grounds for a stay of any action or proceeding instituted contrary to the Agreement.

1990 CBA, Article 26, ¶ B(6); 1993 CBA, Article 26, ¶ B(6).

### C. *The Funds*

As indicated, Acme was required, through the Collective Bargaining Agreements, to contribute to the Welfare Fund and the Pension Fund. *See* Article 15 of the 1990 CBA; Article 15 of the 1993 CBA. The trustees of the Welfare Fund and the trustees for the Pension Fund (collectively, the "Trustees") issued respective declarations of trust (the "Welfare Declaration of Trust" and the "Pen-

sion Declaration of Trust"). *See* Welfare Declaration of Trust, attached as Exhibit 14 to Respondent's Brief; Pension Declaration of Trust, attached as Exhibit 15 to Respondent's Brief. The specific terms of the Welfare Declaration of Trust or the Pension Declaration of Trust were not referenced in the Collective Bargaining Agreements. *See* Article 15 of the 1990 CBA; Article 15 of the 1993 CBA.

The Welfare Declaration of Trust provided, in relevant part:

> The Trustees may compel and enforce the payment contributions in any manner which they may deem proper. The failure of any Employer to make contributions when due shall not relieve any other Employer from its duties or obligations hereunder. Any Employer who fails to make contributions shall be obligated to pay, in addition to said contributions, all expenses and costs of collection that may be incurred by the Trustees, including reasonable attorney's fees, and they shall be obligated to pay such interest or delinquency charges, if any, contained and described in the collective bargaining agreement between the Employer and the Union.

*See* Welfare Declaration of Trust at 8. The Welfare Declaration of Trust is dated 29 March 1976 and encompassed "collective bargaining agreements heretofore negotiated by [Local 945] ... and various Employers pursuant to which there was established this health and welfare fund for the purpose of providing and maintaining benefits for employees covered by said collective bargaining agreements...." *Id.* at 1.

The Pension Declaration of Trust, provided, in relevant part:

> Section 4. *Default in Payment.* Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. In addition to any other remedies to which the parties may be entitled, an Employer in default for ten (10) working days past the due date and set forth in the collective bargaining agreement, may be required, at the discretion of the Trustees, to pay such rate of interest as the Trustees may fix on the monies due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection incurred by the Trustees, including reasonable attorneys' fees. The Trustees may take any action necessary to enforce payment of the contributions due hereunder, including, but not limited to, proceedings at law or in equity.

*See* Pension Declaration of Trust at 11. The Pension Declaration of Trust stated, "This Agreement and Declaration of Trust is made and entered into the ____ day of __________, 1961...." *Id.* at 1. The Pension Declaration of Trust encompassed Local 945 "and the various Employers who are parties to the Collective bargaining agreements ... who are now or may hereafter become parties to this [Pension Declaration of Trust]." *Id.* at 1.

In addition, a resolution ("Resolution") of the Funds' Trustees, dated 18 February 1994, provided for the appointment and designation of arbitrators to render arbitration awards concerning delinquent contributions. *See* Resolution, attached as Exhibit B to Petition, as Exhibit 16 to Respondent's Brief. The Resolution stated, in relevant part:

> Pursuant to the express authority set forth at Article 4.4 of the Funds Trust Agreements, and in view of the significant amounts owed to the Funds in delinquent contributions which as of this date are approximately 1.3 million dollars ... the Trustees hereby appoint and designate Michael Murray and Roger Maher to serve as permanent arbitrators to render arbitration awards ... to the Funds.[2]

*See* Resolution. The Resolution was signed by two individuals whose signature is not legible. The Resolution does not appear to be signed by any employers. *Id.*

D. *Arbitration Award*

On 16 June 1995, Joyce Siegmeister ("Siegmeister"), the Funds' administrator, served Acme with a letter ("Audit Letter") and a copy of an audit performed by independent accountants retained by the Funds

2. The Resolution is an informal, handwritten document, portions of which are illegible.

("Audit Report"). See Audit Letter, attached as Exhibit 5 to Respondent's Brief; Audit Report, attached as Exhibit 6 to Respondent's Brief. The Audit Letter informed Acme that its contributions to the Welfare Fund and Pension Fund were deficient in the amount of $30,713.40 for the period from 1 April 1992 through 31 December 1994. *Id.*

The Audit Letter stated that the "failure [of Acme] to remit all outstanding monies due the Funds within fifteen (15) days of receipt of [the] letter" would cause the Funds to commence immediate collection proceedings. *See* Audit Letter.

On 28 June 1995, counsel for the Funds, Albert G. Kroll ("Kroll")[3] notified Acme of the alleged delinquency and indicated that a failure to pay the delinquent amount would result in a submission of the dispute to "the Funds' permanent arbitrator for resolution." *See* 28 June 1995 Letter from Kroll to Acme ("28 June 1995 Letter"), attached as Exhibit 7 to Respondent's Brief.

By letter, dated 3 August 1995, Kroll notified Acme that an arbitration hearing ("Arbitration Hearing") regarding the alleged delinquency would be conducted on 13 September 1995 at the Board of Mediation, before Michael S. Murray, the Funds' permanent arbitrator ("Arbitrator"). See 3 August 1995 Letter from Kroll to Acme ("3 August 1995 Letter"), attached as Exhibit 8 to Respondent's Brief.

On 13 September 1995, the Arbitration Hearing was held before the Arbitrator at the Board of Mediation. Respondent's Brief at 4. Acme did not attend the Arbitration Hearing. *Id.* The Arbitrator issued a written opinion and award ("Opinion and Award"), which found that Acme failed to make certain welfare and pension contributions. See Opinion and Award, attached as Exhibit 9 to Respondent's Brief. The Arbitrator directed

Acme, among other things, to remit payment to the Welfare Fund and the Pension Fund in the combined amount of $37,363.49, which included audit fees and Arbitrator's fee and to remit payment to Kroll & Gaechter in the amount of $5,850.09. *Id.;* 18 September 1995 Letter of Kroll to Acme ("18 September 1995 Letter"), attached as Exhibit 10 to Respondent's Brief.

By letter, dated 18 September 1995, Kroll forwarded the Opinion and Award to Acme and asserted that payment from Acme was due by 2 October 1995. *See* 18 September 1995 Letter. On 6 October 1995, counsel for Acme, Gerald L. Dorf, Esq. ("Dorf"), informed Kroll that Acme failed to appear at the arbitration hearing due to an "inadvertent misunderstanding" and requested the matter be reopened to allow Acme to present its position to the Arbitrator. See 6 October 1995 Letter from Dorf to Kroll ("6 October 1995 Letter"), attached as Exhibit 11 to Respondent's Brief. Acme also offered to pay the costs of the arbitrator incurred as a result of the new hearing date Id. The Trustees "voted not to reopen the [A]rbitration [H]earing." See 17 October 1995 Letter from Kroll to Dorf ("17 October 1995 Letter"), attached as Exhibit 12 to Respondent's Brief.

On 16 November 1995, Petitioners filed this action seeking to confirm the Opinion and Award. By letter, dated 21 November 1995, Acme again requested the arbitration be reopened, setting forth the reasons for the delinquencies in the audit reports.[4] *See* 21 November 1995 Letter from Dorf to Kroll ("21 November 1995 Letter"), attached as Exhibit 13 to Respondent's Brief. The Petitioners did not reopen the arbitration proceedings.

---

**3.** In the 28 June 1995 Letter, Kroll, of the law firm of Kroll & Gaechter, indicates he is counsel to the Funds. In the instant proceedings, however, Kroll appears to represent all Petitioners.

**4.** Acme submits this information demonstrated Acme "had bona fide defenses to the claims that were brought. . . ." Respondent's Brief at 6.

Briefly, Acme's defenses were that 1) one employee was covered under Acme's own medical

plan, 2) several of the alleged missed payments for a second employee were outside the reporting period and should not have been included, 3) this second employee was also covered under Acme's medical insurance plan, 4) the employment for this second employee ended during the reporting period and 5) benefits for a third employee may not have been required due to the length of his employment. *See* 21 November 1997 Letter.

*Discussion*

### A. *Jurisdiction of the Court to Confirm Arbitration Proceedings*

As a threshold matter, it must be determined whether this court has jurisdiction to confirm the Arbitrator's Opinion and Award, a contention disputed by the parties.

#### 1. *Federal Subject Matter Jurisdiction*

 Federal courts are courts of limited jurisdiction. *Reich v. Local 30, Intern. Broth. of Teamsters*, 6 F.3d 978, 982 & n. 5 (3d Cir.1993); *United Indus. Workers v. Government of Virgin Islands*, 987 F.2d 162, 168 (3d Cir.1993); *Bacon v. Sullivan*, 969 F.2d 1517, 1519 (3d Cir.1992); *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio and Mach. Workers of Am. Local 610*, 900 F.2d 608, 612 (3d Cir.1990); *TM Marketing v. Art & Antiques Assoc.*, 803 F.Supp. 994, 998 (D.N.J.1992). The Constitution does not permit Federal courts to adjudicate cases which do not fall within the jurisdiction conferred by Article III of the United States Constitution and by Congress. *Id.* Although the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, creates a body of Federal substantive law, *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983); *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984); *Isidor Paiewonsky Assoc., Inc., v. Sharp Properties, Inc.*, 998 F.2d 145, 153 & n. 8 (3d Cir.1993), it alone cannot confer subject matter jurisdiction upon a Federal court. *Id.; PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir.1995); *Virgin Islands Housing Authority v. Coastal General Const. Services Corp.*, 27 F.3d 911 (3d Cir.1994); *Sharp Properties, Inc.*, 998 F.2d at 153 & n. 8; *TM Marketing*, 803 F.Supp. at 999. Rather, there must be an independent basis for subject matter jurisdiction before a confirmation of an arbitration award is presented to the Federal courts, pursuant to the Federal Arbitration Act. *TM Marketing*, 803 F.Supp. at 999.

In the instant matter, the Petitioners assert jurisdiction pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, and Section 301 of the LMRA, 29 U.S.C. § 185. Petitioners' Brief at 3; Complaint, ¶ 2. This assertion of Federal subject matter jurisdiction appears to be proper; as well, Acme "has not challenged the issue of [F]ederal subject matter jurisdiction pursuant to ERISA and the LMRA." Respondent's Reply Brief at 2.

#### 2. *Section 9 Jurisdiction*

Acme, however, does contest the propriety of jurisdiction pursuant to Section 9 of the Federal Arbitration Act. Respondent's Brief at 7. Section 9 provides, in relevant part: [i]f the parties *in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration* ... then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in sections 10 and 12 of this title.

Section 9 (emphasis added). Acme argues Section 9 grants Federal courts the authority to confirm an arbitration award only if the parties have specifically agreed in their arbitration agreement that a judgment could be entered pursuant to such an award. Respondent's Brief at 7. Acme contends the Petitioners can present no documentation of an agreement which allows arbitration awards between the parties to be reduced to a judgment in the United States District Court. Respondent's Brief at 9.

Acme first cites both the 1990 CBA and the 1993 CBA, which indicate that the sole remedy for determination of all disputes shall be the grievance and arbitration procedures outlined in the collective bargaining agreements. Pursuant to the twin Collective Bargaining Agreements "[n]either party nor any individual employee shall institute any action or proceeding in a court of law or equity, state or [F]ederal, or before an administrative tribunal, other than to compel arbitration...." *See* 1990 CBA, Article 26, ¶ 6; 1993 CBA, Article 26, ¶ 6.

Acme acknowledges the Welfare Declaration of Trust states that "[t]he Trustees may compel and enforce the payment of contribu-

tions in any manner which they may deem proper." *See* Welfare Fund, 8. Acme also acknowledges the Pension Declaration of Trust states that "[t]he Trustees may take any action necessary to enforce payment of the contributions due hereunder including, but not limited to, proceedings at law or in equity." *See* Pension Fund, 11. Acme further acknowledges the Trustee's Resolution appoints "permanent arbitrators" to "render arbitration awards concerning delinquent contributions to the Funds." *See* 18 February 1994 Resolution ("Resolution"), attached as Exhibit 16 to Respondent's Brief.

Acme argues these documents are void of language which permits any arbitration award to be reduced to a judgment in a Federal court. Respondent's Brief at 9. Acme submits the lack of such an agreement requires that the Petition be dismissed for lack of jurisdiction. *Id.* at 10.

Acme further argues that it is not bound by these documents because "[it] has never entered into any agreement which incorporated the terms of the 'declarations of trust' by reference.... Acme has never been a party to any other agreement or contract, aside from the [C]ollective [B]argaining [A]greements ... that would require Acme to submit any dispute to arbitration." *See* Declaration of Joseph Spagno ("Spagno Dec."), ¶ 7, attached as Exhibit 3 to Respondent's Brief; Affidavit of Edward M. Cornell, Jr. ("Cornell Aff."), ¶ 7, attached as Exhibit 4 to Respondent's Brief.

### a. *Reducing Arbitration Awards to Judgment*

As stated, to confer jurisdiction, Section 9 requires that the "parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." *See* Section 9. What language is required in an agreement to indicate that a judgment of the court is authorized is not set forth in Section 9. While several courts have held that "an explicit agreement between the parties providing for judicial confirmation of an award is not an absolute prerequisite to [S]ection 9 authority to enter judgment on the award," *see Booth*

*v. Hume Pub. Inc.*, 902 F.2d 925, 930 (11th Cir.1990) (where parties agree that arbitration would be binding and final, district court has authority to enter judgment on award); *see also Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 390 (7th Cir.) (holding that an award deemed to "final, conclusive and binding" implicitly agrees that [F]ederal court intervention may be sought to compel compliance), *cert. denied*, 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981); *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 430 (2d Cir. 1974); (consent to entry of judgment can be inferred from the parties' agreement that the arbitrator's decision will be final); *Pennsylvania Engineering Corp. v. Islip Resource Recovery Agency*, 710 F.Supp. 456, 460 (E.D.N.Y.1989), other courts require more specific authorization. *See Oklahoma City Associates v. Wal–Mart Stores, Inc.*, 923 F.2d 791, 794–95 (10th Cir.1991) (in dicta, questioning *Booth* and *Milwaukee Typographical Union); Higgins v. U.S. Postal Service*, 655 F.Supp. 739, 743 (D.Me.1987) (finality clause, absent other corroborating evidence, is not explicit enough to show intent of the parties to have judgment entered); *Division 1287, Amalgamated Transit Union v. Kansas City Area Tran. Auth.*, 485 F.Supp. 856, 859 (W.D.Mo.1980) (no jurisdiction under Section 9 where agreement did not indicate judgment on arbitration award could be entered).

As stated, the instant dispute arises out of the alleged failure of Acme to pay funds into the Welfare Fund and the Pension Fund. While both the 1990 CBA and the 1993 CBA articulated a grievance procedure which precluded the institution of any action or proceeding in a tribunal by Acme or Local 945,[5] both permitted such an action "to compel arbitration ... or *with respect to the award of an arbitrator.*" *See, e.g.*, 1993 CBA, Article 26, ¶ 6 (emphasis added). The Collective Bargaining Agreements also provided that the arbitrator's decision would be "final and binding on both parties." *Id.*, Article 26, ¶ 5. Based upon these provisions, the Collective Bargaining Agreements implicitly authorized

---

**5.** As will be discussed, these provision do not    apply to the Trustees.

confirmation of an arbitration award between Acme and Local 945 in a Federal court. The instant arbitration award, however, was not between Acme and Local 945, but between Acme and the Funds.[6] Moreover, the instant action was brought by Local 945 and the Funds.

The Welfare Declaration of Trust and the Pension Declaration of Trust did not contain language limiting the resolution of disputes to arbitration. Rather, the Welfare Declaration of Trust permitted the Trustees to compel payment "in any manner which they deemed proper." *See* Welfare Fund at 8. The Pension Declaration of Trust permitted the Trustees to "take any action deemed necessary to enforce payment of the contributions due hereunder including, but not limited to, proceedings at law or equity." *See* Pension Fund at 11. This broad language demonstrates an intention by the Trustees to avoid limiting themselves to the internal grievance procedures of each collective bargaining agreement, but to contemplate other avenues of recovery as well. The language in the Welfare Declaration of Trust and the Pension Declaration of Trust does not foreclose the opportunity to submit the matter to arbitration under the Board of Mediation.[7] By way of the Resolution, the Trustees determined to employ a permanent arbitrator of the Board of Mediation to "render arbitration awards concerning delinquent contributions to the Funds." *See* Resolution.

Pursuant to the rules employed by the Board of Mediation, an arbitration award is deemed to be "final and binding" on the parties. *See* N.J.A.C. 12:105–5.5.[8] As discussed, language that indicates the award will be final and binding implicitly permits Federal court intervention to compel compliance. *See, e.g., Milwaukee Typographical Union*, 639 F.2d at 390; *Kallen v. District*

*1199 National Union of Hospital and Health Care Employees*, 574 F.2d 723, 726 (2d Cir. 1978). *Cf. Marine Transit Corporation v. Dreyfus*, 284 U.S. 263, 276, 52 S.Ct. 166, 169–70, 76 L.Ed. 282 (1932). Accordingly, if an agreement between the parties to submit the matter to arbitration did exist, the Opinion and Award is subject to judicial enforcement pursuant to Section 9.

### b. *Existence of an Agreement*

Acme, however, argues it is not bound to the language in the Welfare Declaration of Trust, the Pension Declaration of Trust or the Resolution because the Collective Bargaining Agreements, to which Acme is a party, did not reference those documents. Respondents' Brief at 11–12. Acme states: "Petitioners make an enormous leap of logic—they argue that [Acme] is bound by the Declarations of Trust simply because the Respondent has agreed to make welfare and pension contributions pursuant to the Collective Bargaining Agreements." *Id.* at 12.

In *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co.*, 932 F.2d 1443, 1450 (1991), the Eleventh Circuit held that "an employer who, pursuant to a collective bargaining agreement makes contributions to an employee benefit trust fund governed by ERISA, is bound by the trust agreement for that fund, despite the fact that the trust agreement is not incorporated in the collective bargaining agreement." *Id.* Although the *Vertex* decision did not discuss the confirmation of an arbitration agreement,[9] its reasoning is instructive in this instance.

The court cited the fiduciary duty of ERISA trustees to the interests of the participants and beneficiaries and "to protect

---

6. The caption to the Opinion and Award does not include Local 945.

7. As well, the Collective Bargaining Agreements allowed the parties to utilize the Board of Mediation to arbitrate a grievance between Acme and Local 945 (or its employee) "if acceptable to both parties...." *See, e.g.,* 1993 CBA, Article 26, ¶ 5.

8. N.J.A.C. 12:105–5.5 provides, "[a]fter an award has been delivered to the parties, such award

shall be final and binding upon them subject only to due process of law." *Id.*

9. The dispute centered upon whether an employer was obligated to comply with an audit of its records, a requirement of the trust agreement not incorporated in the collective bargaining agreement. *Vertex Construction Co.,* 932 F.2d at 1450.

vigorously the assets of their trusts." *Id.* The court stated:

> It is undisputed that [the employer] was bound under the collective bargaining agreement to make contributions to the Funds. Although the Funds were not a party to the collective bargaining agreement, [the employer] no doubt understood that by accepting the contributions, the Funds were bound to pay benefits to [its] employees. We fail to see how Vertex can avail itself of the benefits of the Funds without also being subjected to the rules that govern them. *See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.,* 920 F.2d 1491, 1494 (9th Cir.1990), [*cert. denied,* 501 U.S. 1232, 111 S.Ct. 2855, 115 L.Ed.2d 1023 (1991)].
>
> To hold otherwise would allow employers and unions to bargain away the rights and powers of fund trustees in agreements to which the trustees were not a party. Such a situation ultimately would result in underfunded plans that could not pay appropriate benefits to their beneficiaries.

*Id.* at 1451; *see also Santa Monica Culinary Welfare Fund,* 920 F.2d at 1494; *New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc.,* 891 F.Supp. 81, 86 (N.D.N.Y.1995), *aff'd,* 92 F.3d 127 (2d Cir.1996).

10. Acme cites *United Food and Commercial Workers Local 951 v. Mulder,* 31 F.3d 365 (6th Cir.1994). *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1064 (1995) for the proposition that confirmation of an arbitration requires an agreement to arbitrate and that such an agreement may not emanate from a collective bargaining agreement.

In *Mulder,* the Union brought an action to confirm an arbitrator's award against non-union members who objected to the amount of a service fee assessed to them by the Union pursuant to the collective bargaining agreement. *Id.* at 366. The service fee was imposed on the non-union employees to defray the cost of collective bargaining on their behalf. The objection was submitted by the Union to its internal procedure culminating in arbitration. *Id.* The court held the union could not unilaterally impose arbitration as a means of resolution onto the non-union employees where there was no evidence of a signed agreement to arbitrate. *Id.* at 371.

*Mulder,* however, is distinguishable from the instant matter. The differences weaken the persuasiveness of its holding in this matter.

■ The instant matter, as well, involves a provision essential to the management of the Welfare Fund and the Pension Fund to ensure the employers are contributing in accordance with their obligations. Because the Welfare Fund and the Pension Fund are dependant upon participant contributions, the collection power attributed to the Trustees of the Funds is essential to the Funds management and viability. *Contra Jaspan v. Glover Bottled Gas Corp.,* 80 F.3d 38, 41 (2d Cir.) (holding that liquidated damages provision in trust agreement would not bind nonsignatory because it was merely "helpful to the trustees, but ... not essential to ... management of the Funds"), *cert. denied,* —— U.S. ——, 117 S.Ct. 77, 136 L.Ed.2d 36 (1996). Accordingly, Acme is bound by the Welfare Declaration of Trust and the Pension Declaration of Trust even if the terms of the documents are not explicitly incorporated in the Collective Bargaining Agreements.[10]

In this case, the Trustees issued a Resolution in 1994 which permitted matters concerning the delinquency of contributions to be submitted to a permanent arbitrator. *See* Resolution. Acme questions the validity of the Resolution because it is a "handwritten, barely-legible document that has been memorialized on a sheet of ordinary paper and lacks the formality of an organizational letterhead." Respondent's Brief at 8. Acme

First, in *Mulder,* the non-union employees were not signatories to the only agreement at issue—the collective bargaining agreement. Here, while Acme was not a signatory to the Welfare Declaration of Trust, the Pension Declaration of Trust or the Resolution, it was a signatory to the Collective Bargaining Agreements through which it was obligated to remit contributions to the Funds. Acme contributed to the Funds with the intent of receiving a benefit—coverage for its employees. This mutuality works to bind Acme to the terms established by the Trustees to ensure the viability of this benefit.

Second, *Mulder* involved the assessment of a service charge for collective bargaining on behalf of non-union employees. The instant case involves contributions for union employees to multi-employer benefits funds, upon which the Funds are dependant. The Trustees must be vested with broad authority to collect contributions to ensure the Funds viability.

argues Petitioners have not provided any information regarding the method in which the purported Resolution was considered or adopted by the Trustees. *Id.* Acme submits "such omissions call into question whether the [T]rustees have satisfied the fiduciary responsibilities imposed upon employee benefit plan administrators." *Id.* at 8–9 & n. 3. Acme further contends that, despite the Resolution, an agreement to arbitrate was required before the matter was submitted to arbitration. Respondent's Brief at 15. Acme contends that, rather than arbitration, the Funds should have instituted litigation by way of summons and a complaint. *Id.*

Although the Resolution does lack formality, this deficiency does not render invalid the Arbitration Hearing in this matter. As discussed, the Welfare Declaration of Trust and the Pension Declaration of Trust granted the Trustees broad measures to collect delinquent contributions. Even absent the Resolution, it does not appear to contradict the Welfare Declaration of Trust or the Pension Declaration of Trust for the Trustees to submit the matter to arbitration at the Board of Mediation.

Arbitration, however, "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation, Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The question of whether the parties agreed to arbitrate a dispute is one for the courts to resolve. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 939, 941–43, 115 S.Ct. 1920, 1922, 1923–24, 131 L.Ed.2d 985, (1995). Even if agreement on the part of Acme was required before arbitration proceedings were instituted, Acme's silence in these circumstances may be interpreted to constitute agreement.

Courts have held that being a signatory to the arbitration provision is not necessarily controlling in the determination of whether an arbitration provision is applicable. *Cf. Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir.1993) (party estopped from denying its obligation to arbitrate under agreement to which it was not a signatory when it had notice of the agreement and did not object to arbitration clause contained therein); *Gvozdenovic v. United Air Lines. Inc.,* 933 F.2d 1100, 1105 (2d Cir.), *cert. denied,* 502 U.S. 910, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991) (where party participated in arbitration and neither refused to arbitrate nor objected to arbitration, agreement to arbitrate could be implied); *Ripmaster v. Toyoda Gosei, Co., Ltd.,* 824 F.Supp. 116 (E.D.Mich.1993) (nonsignatory employee held to honor arbitration clause to which employer was signatory). Here, Acme's failure to act and subsequent request to reopen, at its expense, the arbitration proceedings are sufficient to infer acceptance of arbitration as a method of dispute resolution.

As discussed, Acme was notified of its alleged deficient contributions in June 1995. *See* 16 June 1995 Letter; 28 June 1995 Letter. Acme was informed the Trustees intended to submit the alleged delinquency to "the Funds permanent arbitrator for resolution" at the office of the Board of Mediation on 13 September 1995. *See* 28 June 1995 Letter. Acme did not object to arbitration before the Board of Mediation, whose rules provide that an arbitration award shall be "final and binding." *See* N.J.A.C. 12:105–5.5.

Acme did not object to .the Arbitration Hearing at any time prior to the Arbitration Hearing. Acme also did not appear or present objection at the Arbitration Hearing. Acme was notified of the arbitration award on 18 September 1995. On 6 October 1995, Acme explained that it did not appear at the Arbitration Hearing due to an "inadvertent misunderstanding" and, again without objecting to arbitration as the method of resolution, sought to reopen the Arbitration Hearing to "present its case to the arbitrator." *See* 6 October 1995 Letter. Only now does Acme move to vacate the Opinion and Award, citing lack of authority to arbitrate. Based upon the notice provided to Acme, its failure to provide any objection to the proceedings, and its request to reopen the arbitration, Acme is deemed to have agreed to the arbitration proceeding. Acme also failed to object to, and sought to reopen, the proceedings as conducted by the Board of Mediation. Because the Board of Mediation renders deci-

sions that are "final and binding," Acme implicitly agreed to allow confirmation of an arbitration award pursuant to the Federal Arbitration Act.

### B. Grievance Procedure in Collective Bargaining Agreements

■ Acme argues it only agreed to arbitrate disputes set forth in the Collective Bargaining Agreements. Respondent's Brief at 15. Acme argues the Petition should be vacated because Local 945 failed to file a timely grievance pursuant to Article 26 of the Collective Bargaining Agreements. The relevant portion of the Collective Bargaining Agreements to this argument reads:

All grievances, disputes or controversies shall be presented within five (5) working days after they arise or they shall be deemed to have been waived.

See, e.g., 1993 CBA, Article 26. Acme argues because Local 945 did not file a timely grievance it should not "get a second bite at the apple" in this proceeding. Respondent's Brief at 17. As indicated, however, this action is brought by the Welfare Fund and the Pension Fund, in addition to Local 945.[11] The Trustees to the Funds are not bound by the grievance procedures in the Collective Bargaining Agreement.

In Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), the Supreme Court addressed the question of whether a trust fund was required to submit a contribution dispute to the grievance procedures outlined in the collection bargaining agreement. The Court first determined that there was no presumption of arbitrability because the dispute arose between the employer and the trust fund, not the employer and the union; accordingly, the policy goal of peaceful labor relations, which created the arbitration presumption, would not be served by applying it to trust funds because they did not have the damaging "economic weapons" of strikes or lockouts.

The Court stated that, with respect to multiemployer trust funds:

[e]ach of the participating unions and employers has an interest in the prompt collection of the proper contributions from each employer. Any diminution of the fund caused by the arbitration requirements of a particular employer's collective-bargaining agreement would have an adverse effect on the other participants. The enforcement mechanisms established in the trust agreements protect the collective interests of the parties from the delinquency of individual employers by allowing the trustees to seek prompt judicial enforcement of the contributions requirements. It is unreasonable to infer that these parties would agree to subordinate those mechanisms to whatever arbitration procedures might be required by a particular employer's collective-bargaining agreement. In the absence of evidence of the contrary, therefore, we will not infer that the parties to the two multiemployer trust funds intended to condition the trustees' enforcement authority on the arbitration procedures contained in petitioners' separate collective bargaining agreements.

Id. at 373–74, 104 S.Ct. at 1850 (footnotes omitted).

Schneider "stands for the proposition that courts must carefully examine the pertinent trust and collective bargaining agreements to determine whether parties intended to arbitrate disputes between trust funds and employers." Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, et al., 856 F.2d 837, 840 (7th Cir.1988) (citing Schneider, 466 U.S. at 371–72, 104 S.Ct. at 1848–49). See also Trustees of the Local 478 Trucking and Allied Industries Pension Fund v. Siemens Corp., 721 F.2d 451 (3d Cir.1983) (in pre-Schneider case, holding that trustees could maintain court action despite arbitration clause in collective bargaining agreement); Trucking Employees of North Jersey Welfare Fund, Inc. v. Brock-

11. Although this action is brought by the Funds and Local 945, it appears the Funds, and not Local 945, were responsible for conducting the audit of Acme's books, requesting payment of the delinquent contributions, initiating the Arbitra-

tion Hearing and refusing to reopen the Arbitration Hearing. See Audit Letter, Audit Report, 28 June 1995 Letter, 3 August 1995 Letter, 18 September 1995 Letter, 17 October 1995 Letter.

*way Fast Motor Freight, Co.*, 130 F.R.D. 314, 319 (D.N.J.1989).

The arbitration clauses in the instant Collective Bargaining Agreements contain no suggestion that either Acme or Local 945 intended to require disputes between the Trustees and Acme to be arbitrated pursuant to the grievance procedure in the Collective Bargaining Agreements. Rather, the grievance procedures govern any "grievance, dispute or controversy [which] arise[s] between the Employer or the Union or any of the regular, full time employees covered by the Agreement...." *See, e.g.,* 1993 CBA, Article 26.

As well, Article 16 states that "[f]or the purposes of filing a grievance under *this Section* [Employment Records & Audit Thereof], the time limitations set forth in the Grievance and Arbitration provision shall commence upon the *Union's* presentation to the Employer of the results of the examination of said records." *Id.* at Article 16 (emphasis added). The language in the Collective Bargaining Agreements does not address the responsibility of the Trustees to bring its action pursuant to the grievance procedure outlined in the Collective Bargaining Agreement. In addition, there is no limitation on what type of proceeding the Trustees might bring to compel contribution to the Funds.

The arbitration was performed through an implicit agreement between Petitioners and Acme, not the Collective Bargaining Agreements. Based on the foregoing, jurisdiction exists pursuant to Section 9 to confirm the arbitration Opinion and Award. The Opinion and Award, however, will not be confirmed in this instance based upon equitable principles.

## C. *Equitable Considerations*

In Point IV of the Respondent's Brief, Acme assumes *arguendo* the court has jurisdiction pursuant to Section 9 and further assumes *arguendo* it is bound by the arbitration proceeding conducted. Acme argues, in the alternative, that "the award should be vacated because ... the misbehavior and partiality that was present in the process prejudiced the rights of [Acme] and did not afford a fair hearing." Respondent's Brief at 18.

Acme first contends the "permanent arbitrator" was not an independent or neutral hearing officer selected by mutual agreement or consent of the parties. *Id.* Rather, the Arbitrator was unilaterally retained and "entered an award after conducting an *ex parte* hearing." *Id.*

■ These arguments lack substance and merit. The Arbitration Hearing was conducted by an Arbitrator from the Board of Mediation. Other than the fact that he was retained as a "permanent arbitrator" to preside over such contribution delinquency hearings, there is no evidence that he is biased or lacked neutrality. As well, the Arbitration Hearing was not conducted *ex parte.* Acme was given advance notice of the hearing by the Funds' administrator. *See* 16 June 1995 Letter. Acme, however, did not attend the Arbitration Hearing "through some inadvertent misunderstanding." *See* 6 October 1995 Letter. In the 6 October 1995 Letter, Acme does not elaborate as to what the "inadvertent misunderstanding" entailed, however neither does it contest the appropriateness of the Arbitration Hearing.

As further evidence of alleged bias, Acme points out that counsel for the Petitioner's, not the arbitrator, informed Acme of the Arbitration Hearing. *See* 3 August 1995 Letter. Acme argues this contradicts the statement in the Opinion and Award which indicated the arbitrator "ordered the parties to appear on [13 September 1995]." *See* Opinion and Award at 2. It is unclear how this fact demonstrates that the hearing conducted by the Arbitrator was unfair.

Acme argues, finally, that the Arbitrator exceeded the scope of his authority. Respondent's Brief at 19. The Resolution appointed the permanent arbitrators "[p]ursuant to the express authority set forth at Article 4.4 of the Trust Fund Agreements." *See* Resolution. Article 4.4, however, only exists in the Welfare Declaration of Trust. Acme argues any award based upon the Pension Declaration of Trust is beyond the scope of the authority granted by the Resolution and cannot be confirmed. Respondent's Brief at 20.

As discussed, even absent the Resolution, Acme implicitly agreed to arbitration based upon its silence in the face of the Arbitration Hearing and its request to reopen arbitration. Acme's failure to enter any objection to the Arbitration Hearing, despite the opportunity to do so on several occasions, is interpreted as acceptance of the Arbitration Hearing. As well, Acme's request to reopen the proceedings further undermines its argument that the arbitration was improper.

■ Principles of equity, however, require that the Arbitration Hearing be reopened. Acme failed to attend the Arbitration Hearing due to what it claims was an "inadvertent misunderstanding." Acme requested that the proceedings be reopened and offered to pay the cost of the Arbitrator in order to have the opportunity to be heard. *See* 6 October 1995 Letter. Without explanation, however, the Trustees refused to accommodate this request. *See* 17 October 1995 Letter.

The circumstances in this case are analogous to a motion to vacate default, whereby one party commits a procedural error which precludes its ability to present its defenses. Accordingly, the factors in determining a motion to vacate default are instructive in concluding that the Arbitration Hearing in this matter should be reopened.

In deciding whether to vacate default, consideration is given as to whether the plaintiff would be prejudiced, whether the defendant has a meritorious defense and whether the defendant's conduct is excusable or culpable. *See, e.g., Zawadski De Bueno v. Bueno Castro*, 822 F.2d 416, 419–20 (3d Cir.1987); *Gold Kist. Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir.1985). An examination of those factors in the instant case indicates further proceedings are necessary in the interest of justice.

First, the Petitioners in this case would not be prejudiced. Although, as discussed, notice was given to Acme, Acme failed to attend the Arbitration Hearing due to an "inadvertent mistake." The request to reopen the Arbitration Hearing was made by Acme on 6 October 1995, only a few weeks after issuance of the Arbitrator's Opinion and Award. Without explanation, Petitioners refused this request. It is not clear how Petitioners would be prejudiced to allow Acme to present its case, especially considering Acme volunteered to pay the costs of the Arbitrator incurred as a result of the additional arbitration proceedings. Upon rehearing, the worst case scenario for the Petitioners would be if the Arbitrator decides Acme was not delinquent in its payments. Even in this scenario, however, Petitioners would not be prejudiced. Rather, they would simply not receive payments to which they were not entitled.

It also appears Acme may have a meritorious defense. Although the submissions in the instant matter did not discuss the substance of the defenses proffered by Acme, those defenses were outlined in the 21 November 1995 Letter. Without comment on the viability of the defenses, it appears the defenses have theoretical merit and should be presented to the Arbitrator in the interests of fairness.

Finally, it must be determined whether the conduct of Acme was excusable or culpable. The record demonstrates all correspondence concerning the arbitration proceedings was sent directly to Acme. It was not until after the Arbitration Hearing was complete that counsel for Acme became involved and indicated Acme had failed to appear at the Arbitration Hearing due to an "inadvertent mistake."

The nature of the mistake was not disclosed. It appears from Acme's submissions in the instant Motion to Vacate the Arbitration Award, however, that Acme believed it was bound only to the arbitration process outlined in the Collective Bargaining Agreements, and not the proceedings imposed by the Funds. It is unclear why Acme never raised its objection prior to the Arbitration Hearing. The conduct of Acme, however, does not appear to be insouciant or willful, warranting the confirmation of the Opinion and Award without affording it a full and fair opportunity to be heard.

*Conclusion*

Based on the foregoing, the Motion to Confirm the Arbitration Award is denied and the Motion to Vacate the Arbitration Award

is granted. The Petition is dismissed without prejudice.[12] The parties are directed to reopen the arbitration proceedings, with costs for the Arbitrator to be paid by Acme, to allow Acme the opportunity to present its defenses.

12. The Petitioners argue in Point V of the their brief that "even if the court for whatever reason cannot confirm arbitration pursuant to the Federal Arbitration Act, the court nevertheless has jurisdiction in this case provided by Section 502 of ERISA and Section 301 of the LMRA." Petitioners' Brief at 13. This argument fails because the Petitioners sought only the confirmation of the Opinion and Award in its Petition. *See* Petition at 4–5. Because the Opinion and Award are not confirmed, the Petition should be dismissed without prejudice.