BRICKLAYERS PENSION TRUST FUND, Metropolitan Area, Trustees of; Bricklayers Holiday Trust Fund, Metropolitan Area, Trustees of; Trowel Trades Health and Welfare Fund, Detroit and Vicinity, Trustees of; Bricklayers Joint Apprenticeship Cooperation Committee, Trustees of; Plaintiffs–Appellees,

v.

ROSATI, INC., Defendant–Appellant.

No. 00–1245.

United States Court of Appeals, Sixth Circuit.

Oct. 29, 2001.

Before MERRITT and DAUGHTREY, Circuit Judges, WELLS, District Judge.*

MERRITT, Circuit Judge.

In a prior appeal, we directed the district court to address on remand the issue of whether the liquidated damages provision in the collective bargaining agreement between defendant and the Bricklayers Union constitutes a penalty under the federal common law. *Bricklayers Pension Trust fund v. Rosati,* No. 98–1552, 1999 WL 503501 (6th Cir. July 7, 1999). We have previously held that a provision in a labor agreement allowing for liquidated damages must meet two requirements for enforceability: First, the harm caused by the breach must be very difficult or impossible to estimate. Second, the amount fixed must be a reasonable forecast of just compensation for the harm caused. *Michigan Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.,* 933 F.2d 376,

---

* The Honorable Lesley Brooks Wells, United States District Court for the Northern District of Ohio, sitting by designation.

390 (6th Cir.1991). We agree with the district court that the provision in question meets both standards.

The plain language of the collective bargaining agreement clearly states that the trustees will *set a separate schedule* that will be used to determine liquidated damages:

> Section 8. [Regarding the employers' contributions to the various fringe benefit funds]
>
> . . .
>
> The Trustees of the several fringe benefit funds *shall* have the power, as established through their respective trust instruments, *to fix a schedule of cost of collection fees or charges, in the nature of liquidated damages,* to be assessed against any Employer failing to make the contributions required hereunder in proper amount when due.

1994–1998 Agreement with Metropolitan Detroit Bricklayers District Council and International Union of Bricklayers and Allied Craftsmen, AFL–CIO at 12 (emphasis added) (J.A. at 33). It is not disputed that this agreement was signed by defendant on September 22, 1995 (J.A. at 37–38).

The trustees adopted a fee schedule that provides that liquidated damages on unpaid contributions shall be $10 per bricklayer for each week that the contribution is late. If a report is timely submitted but no payment accompanies the report, the liquidated damages are reduced to $5 per bricklayer per week. The fund charges interest at an annual rate of 12% from the date due until the contribution is paid. The total amount of liquidated damages is limited to 20% of the total contribution plus interest. Assessment Program Adopted by Trustees, April 12, 1994 (J.A. at 41)

First, the record demonstrates that the harm caused by the delinquent contributions is difficult to estimate. As testified to by employees who administer the fund,

the harm to the funds from late payments comes from many sources, including loss of the use of money expected at a certain time, administrative costs of collection efforts, such as correspondence and phone calls, and the uncertainty of whether the contribution will ever be collected. Such collection efforts are "so intertwined with on-going operations that their separate value is most difficult to measure." *Board of Trustees v. Udovch,* 771 F.Supp. 1044, 1049 (N.D.Cal.1991).

Second, the amount of liquidated damages assessed must be a reasonable forecast of the estimated harm caused. The trustees must make a good-faith effort to set an amount equivalent to the damages they anticipate. The evidence in the record demonstrates that the trustees established as best they could how much the late contributions were costing the funds and crafted the liquidated damages provisions to capture that loss. They gathered information on actual costs that they could determine over the period of time at issue and determined the costs and interest rate from that data. *See* Assessment Program (J.A. at 41); Estimated Costs of Delinquent Contributions (J.A. at 42–43). The district court went over the details of these estimates in its opinion and we will not reiterate them here. D. Ct. Op. at 4–5 (J.A. at 6–17).

On appeal, defendant's primary complaint goes to the flat fee assessment of $5 or $10 per bricklayer per week for late contributions. Defendant argues that, traditionally, damages associated with late payment of money due is calculated through interest, not by a flat rate per person. This argument ignores the fact that the fund is not simply a bank holding money for employees, but it is administering a *benefit plan* for the employees. The damage to the fund is more than simply lost money or the loss of use of that mon-

ey.[1] The procedures to collect the delinquent contributions cause the fund to incur actual hard costs.

Defendant states there is no proof that the funds incur increased costs due to collection efforts. To the contrary, specific evidence was offered in the record of the direct costs to the fund in 1996, 1997 and 1998. Estimated Costs of Delinquent Contributions. J.A. at 42–43. Defendant challenges the accuracy of these numbers, but it offered no evidence either in the district court or here that would disprove them. Based on the testimony of the employees who administer the fund and investigate and collect the delinquent contributions, as well as the exhibit presented by the trustees setting forth estimated costs for each task undertaken in the collection effort, we agree that the district court may rely on this information.

The reasonableness of the estimated damages is also demonstrated by evidence in the record. For example, the evidence shows that the fund incurred costs of $56,900 in 1996 in collecting and administering delinquent contributions. The trustees actually assessed $57,000 in liquidated damages that year. Again, while defendant may dispute the accuracy of these numbers, it has not shown where there is error in the calculations.

Defendant makes two other arguments based on the liquidated damages provision. It argues that it cannot be automatically bound to the separate schedule through its signing of the collective bargaining agreement. Defendant, however, knowingly entered into an agreement that gave the trust fund the right to set the manner in which liquidated damages would be determined. The plain language of the collective bargaining agreement gives the trustees the power, as established in the trust

documents, to "fix a schedule of cost of collection fees or charges" in the nature of liquidated damages. If defendant believed that this provision was too vague or indefinite and it did not agree to the exercise of that power by the trustees, it should not have signed the collective bargaining agreement. Furthermore, as noted by plaintiffs in their brief, the schedule setting forth how the liquidated damages would be calculated was actually prepared and available for review by the defendant in 1994, *before* defendant signed the collective bargaining agreement in September 1995. Defendant could therefore have reviewed or inquired about the schedule if it wished. Defendant cannot now be heard to claim that the provision is unenforceable for indefiniteness. Defendant is bound by the terms of the collective bargaining agreement, which allows the trustees to set a fee schedule for late payments. *Central States, Southeast and Southwest Areas Pension Fund v. Bomar Nat'l, Inc.,* 253 F.3d 1011, 1020 (7th Cir.2001) (employer bound by terms of trust agreement setting forth interest rate by executing collective bargaining agreement that referenced trust documents); *Teamsters–Employer Local No. 945 Pension Fund v. Acme Sanitation Corp.,* 963 F.Supp. 340, 348–49 (D.N.J.1997) (upholding arbitration clause decided on by trustees because trustees given broad powers in collective bargaining agreement to collect delinquent contributions).

Defendant also argues that the liquidated damages provision is unenforceable because there was no mutuality of obligation. But defendant concedes that it signed the collective bargaining agreement through which it became obligated to remit contributions to the funds. Defendant

---

1. The 12% interest rate imposed by the liquidated damages provision is not seriously challenged by defendant. The evidence demonstrates that the fund realized a return of 12–20% in the years at issue.

contributed to the funds with the intent of receiving a benefit—coverage for its employees. These reciprocal promises are sufficient consideration to form a binding agreement and to create a duty to pay the contributions and any applicable penalties.

In sum, the record supports the fact that the plaintiff trustees have made a good faith effort to develop a liquidated damages provision that reasonably estimates the costs associated with late contributions. The liquidated damages provision and assessment program implemented by the trustees is not void as a penalty.

Accordingly, the judgment of the district court is affirmed.